1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9

10

DARRELL KENT,

11

Plaintiff,

12

v.

13

WASHINGTON STATE SPECIAL
COMMITMENT CENTER CHIEF
MEDICAL DIRECTOR, DR. LESLIE
SZIEBERT; WASHINGTON STATE
SPECIAL COMMITMENT CENTER
GALINA DIXON, ARNP,

14
15
16

Defendants.

17

CASE NO. 3:15-CV-05553-BHS-DWC

REPORT AND RECOMMENDATION
ON DEFENDANT DIXON'S MOTION
TO DISMISS

Noting Date: May 13, 2016

18      The District Court has referred this action, filed pursuant to 42 U.S.C. § 1983, to United

19 States Magistrate Judge David W. Christel. Before the Court is Defendants' Motion to Dismiss

20 filed by Defendant Galina Dixon ("Dixon"). Dkt. 19.

21      The Court concludes Plaintiff has failed to state a claim against Defendant Dixon on

22 which relief can be granted. Therefore, the Court recommends Defendant Dixon's motion be

23 granted, and Plaintiff given leave to amend his complaint to state a claim against Defendant

24 Dixon.

REPORT AND RECOMMENDATION ON
DEFENDANT DIXON'S MOTION TO DISMISS -
1

1 **BACKGROUND**[1]

2     Plaintiff is a civilly-committed detainee at the Washington State Special Commitment

3 Center ("SCC"). Dkt. 6, p. 1; ¶ 8.2.[2] On November 29, 2012, Plaintiff submitted a sick call slip to

4 the SCC Medical Center indicating he had been experiencing severe pain in his lower abdomen for

5 the past two weeks. Dkt. 6, ¶ 5.1. The next day, Plaintiff alleges "an appointment was scheduled to

6 see [Defendant] Dixon on Tuesday, [December 4, 2012]. This appointment was never written

7 down in the hand written schedule by the medical staff. Therefore, the Plaintiff was not informed

8 of this appointment." Dkt. 6, ¶ 5.2. On December 6, 2012, Plaintiff submitted a second sick call

9 slip and received an appointment for December 12, 2012. Dkt. 6, ¶ 5.3. Plaintiff alleges he attended

10 this appointment, but "was so delirious he had no recollection of being there and it seems that all

11 those who came into contact with Plaintiff . . . at the medical clinic failed to notice he was not

12 responding coherently." Dkt. 6, ¶ 5.4.

13     On December 13, 2012, Plaintiff alleges he does not recall what occurred. Dkt. 6, ¶ 5.5.

14 However, Plaintiff alleges an SCC Observation Report reflects Plaintiff was in so much pain he

15 was unable to get to the medical clinic without assistance. Dkt. 6, ¶ 5.5. Later in the day, Plaintiff

16 alleges unnamed medical staff visited him in his room, whereupon they observed Plaintiff had a

17 high temperature and erratic pulse. Dkt. 6, ¶ 5.5. After examining Plaintiff, unspecified individuals

18 decided Plaintiff should be taken to an emergency room. Dkt. 6, ¶¶ 5.5-5.6. At the emergency

19

20     [1] Plaintiff has alleged two pages of facts in the Complaint. *See* Dkt. 6, pp. 6-8. The Court has

21 considered all factual allegations contained in the Complaint. However, throughout this Report and Recommendation, the Court will only discuss the factual allegations relevant to determining if Plaintiff has stated a claim for which relief can be granted.

22     [2] The SCC exclusively houses individuals whom a Washington State court has found, beyond a reasonable doubt, to be sexually violent predators ("SVP"). Wash. Rev. Code § 71.09.010 *et seq.* (2015).

23 Determinations of SVP status and commitment to the SCC are effectuated in a civil proceeding, and the primary purpose of the commitment is long-term intensive inpatient treatment. Wash. Rev. Code §

24 71.09.010 (2015).

REPORT AND RECOMMENDATION ON
DEFENDANT DIXON'S MOTION TO DISMISS -
2

1    room, Plaintiff was diagnosed with viral/spinal meningitis, and remained in the hospital for

2    treatment for four days. Dkt. 6, ¶ 5.7.

3                                       **STANDARD OF REVIEW**

4          A motion to dismiss can be granted only if Plaintiff's Complaint, with all factual allegations

5    accepted as true, fails to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v.*

6    *Twombly,* 550 U.S. 544, 545 (2007).

7          To survive a motion to dismiss, a complaint must contain sufficient factual matter,
           accepted as true, to "state a claim to relief that is plausible on its face." A claim has
8          facial plausibility when the plaintiff pleads factual content that allows the court to
           draw the reasonable inference that the defendant is liable for the misconduct
9          alleged. The plausibility standard is not akin to a probability requirement, but it
           asks for more than a sheer possibility that a defendant has acted unlawfully.

10   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 556, 570). A complaint

11   must contain a "short and plain statement of the claim showing that the pleader is entitled to

12   relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the

13   defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v.*

14   *Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted). However, the pleading must be

15   more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at

16   678.

17         While the Court must accept all the allegations contained in the Complaint as true, the

18   Court does not have to accept a "legal conclusion couched as a factual allegation." *Id.* "Threadbare

19   recitals of the elements of a cause of action, supported by mere conclusory statements, do not

20   suffice." *Id.*; *Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague

21   and mere conclusory allegations unsupported by facts are not sufficient to state section 1983

22   claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While the Court is to construe the

1  complaint liberally, such construction "may not supply essential elements of the claim that were

2  not initially pled." *Pena*, 976 F.2d at 471.

3  **DISCUSSION**

4      In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he

5  suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the

6  violation was proximately caused by a person acting under color of state law. *See Crumpton v.*

7  *Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to identify

8  the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

9  To satisfy the second prong, a plaintiff must allege facts showing how individually named

10  defendants caused, or personally participated in causing, the harm alleged in the complaint. *See*

11  *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

12      I.    **Eighth Amendment Claim**

13      Defendant Dixon argues Plaintiff has failed to state a claim for deliberate indifference

14  under the Eight Amendment. However, the Due Process Clause of the Fourteenth Amendment,

15  rather than the Eighth Amendment, applies to claims of constitutionally inadequate medical care

16  for involuntarily committed SVPs at the SCC. *Mitchell v. State of Washington*, ___ F.3d. ___, 2016

17  WL 945677, at *3 (9th Cir. 2016) (*citing Youngberg v. Romeo*, 457 U.S. 307, 321-22, 102 S.Ct.

18  2452, 2462, 73 L.Ed.2d. 28 (1982) *and Ammons v. Wash. Dep't. of Soc. & Health Servs.*, 648 F.3d

19  1020, 1027 (9th Cir. 2011)). *See also Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979) *Jones v.*

20  *Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). Thus, Plaintiff's claims—as well as Defendant's

21  motion to dismiss—must be analyzed under the Fourteenth Amendment Due Process Clause.

22

23

24

REPORT AND RECOMMENDATION ON
DEFENDANT DIXON'S MOTION TO DISMISS -
4

II.   **Fourteenth Amendment Due Process Claim**

A.  *Legal Standard*

1.  Deliberate Indifference

Though the Due Process Clause, rather than the Eighth Amendment, governs claims of constitutionally inadequate medical care by SVPs, the Ninth Circuit has held "SVPs must, at a minimum, be afforded the rights afforded prisoners confined in a penal institution. Thus, the Eighth Amendment still provides a floor for the level of protection that SVPs must receive under the Fourteenth Amendment, and because the contours of the Eighth Amendment are more defined, Eighth Amendment jurisprudence may provide helpful guidance as to the standards to be applied." *Hydrick v. Hunter*, 500 F.3d 978, 989 (9th Cir.2007), *vacated on other grounds,* 556 U.S. 1256, 129 S.Ct. 2431, 174 L.Ed.2d 226 (2009). An Eighth Amendment medical claim has two elements: (1) "the seriousness of the prisoner's medical need and [(2)] the nature of the defendant's response to that need." *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (*quoting Estelle*, 429 U.S. at 104). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *Id.* at 1059-1060.

If a plaintiff shows he suffered from a serious medical need, he must then show the prison officials responded to the need with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825,

834 (1970). "Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted); *see Hudson v. McMillan*, 503 U.S. 1, 6 (1992).  Deliberate indifference to a prisoner's serious medical need requires "a purposeful act or failure to act on the part of the defendant." *McGuckin*, 974 F.2d at 1060. In other words, "[a] defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *Id*. A prison official, accordingly, will not be found deliberately indifferent to a prisoner's serious medical needs, "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or [ ] may be shown by the way in which prison physicians provide medical care." *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988). However, delay in providing a prisoner treatment does not constitute an Eighth Amendment violation unless the delay causes substantial harm. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985); *Amarir v. Hill*, 243 Fed. Appx. 353, 354 (9th Cir. 2007). Further, a mere "'difference of medical opinion' as to the need to pursue one course of treatment over another" does not constitute deliberate indifference. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). A prisoner must instead show the chosen course of treatment "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health." *Id. See also Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).

2. *Youngberg* Professional Judgment

1    Though the Ninth Circuit has historically used the deliberate indifference framework to

2    analyze claims of constitutionally deficient medical care by a civilly committed individual, the

3    Ninth Circuit recently evaluated a SVP's claims of constitutionally deficient medical care solely

4    using the "professional judgment" test articulated in *Youngberg v. Romeo*. *See Mitchell*, ___ F.3d.

5    ___, 2016 WL 945677, at *3. Under the *Youngberg* professional judgment standard,

6    "[i]nvoluntarily committed patients in state mental health hospitals have a Fourteenth Amendment

7    due process right to be provided safe conditions by the hospital administrators . . . . [W]hether a

8    hospital administrator has violated a patient's constitutional rights is determined by whether the

9    administrator's conduct diverges from that of a reasonable professional." *Ammons*, 648 F.3d at

10   1027. A medical decision, "if made by a professional, is presumptively valid; liability may be

11   imposed only when the decision by the professional is such a substantial departure from accepted

12   professional judgment, practice, or standards as to demonstrate that the person responsible actually

13   did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323. Under both the Eighth

14   Amendment deliberate indifference and the *Youngberg* professional judgment standard, mere

15   medical malpractice or negligence is insufficient to demonstrate a Constitutional violation. *See*

16   *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed. 2d 251 (1976); *Patten*, 274 F.3d

17   at 842-43.

18   The Court analyzes Plaintiff's claims under both the Eighth Amendment deliberate

19   indifference standard *and* under the *Youngberg* professional judgment standard.

20   B.   *Application of Standard*

21   Defendant Dixon argues Plaintiff has failed to properly plead both elements of a claim of

22   deliberate indifference. Specifically, Defendant Dixon argues Plaintiff failed to plead the existence

23

24

of a serious medical need, or Defendant Dixon was deliberately indifferent to Plaintiff's serious medical need.

Plaintiff alleges he was suffering from acute viral/spinal meningitis, which caused severe pain and delirium. *See* Dkt. 6, ¶¶ 5.1-5.6, 5.9. Viewed in the light most favorable to Plaintiff, these allegations sufficiently establish the existence of a serious medical need. *See McGuckin*, 974 F.2d at 1059-60. *See also, e.g.*, *Nam Dang v. Sheriff of Seminole County, Fla.*, 38 F. Supp.3d 1333, 1337 (M.D. Fla. 2014) (finding the plaintiff's symptoms arising from meningitis constituted a serious medical need).

However, while Plaintiff has sufficiently pled the existence of a serious medical need, he has failed to properly plead how Defendant Dixon was deliberately indifferent to that need. Plaintiff makes the conclusory allegation Defendant Dixon was responsible for denying, delaying, or otherwise preventing Plaintiff from obtaining adequate medical care. Dkt. 6, ¶ 3.9, 5.10. But, a review of Plaintiff's complaint does not reveal any factual allegations consistent with this conclusory allegation. Plaintiff's factual allegations do not indicate whether Defendant Dixon was aware Plaintiff was experiencing medical issues, or whether Defendant Dixon had any role in treating—or denying or delaying treatment—for Plaintiff's meningitis. Dkt. 6, ¶¶ 5.2-5.7. The only reference Plaintiff makes to Defendant Dixon's participation in his treatment is an allegation that Plaintiff was *scheduled* to see Defendant Dixon on December 4, 2012, but Plaintiff did not attend because unspecified medical staff never informed him an appointment had been set. *See* Dkt. 6, ¶ 5.2.  Even taken in the light most favorable to the Plaintiff, his allegations in the complaint fail to establish how Defendant Dixon caused, or personally participated in causing, any deprivation of Plaintiff's constitutional rights. *See Arnold*, 637 F.2d at 1355 (*citing Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978) ("a person 'subjects' another to the deprivation of a constitutional right

1  . . . if he does an affirmative act, participates in another's affirmative acts, or omits to perform an

2  act which he is legally required to do that causes the deprivation . . . .")). *See also Leer v. Murphy*,

3  844 F.2d 628, 633 (9th Cir. 1988).

4         Even if the allegations in the complaint were sufficient to establish Defendant Dixon

5  personally participated in a denial of Plaintiff's constitutional rights, Plaintiff has failed to satisfy

6  either the deliberate indifference or the *Youngberg* professional judgment standard. Under both

7  standards, mere negligence or medical malpractice is insufficient to establish a violation of

8  Plaintiff's Fourteenth Amendment Due Process rights. *Estelle*, 429 U.S. at 106; *Patten*, 274 F.3d at

9  842-43 (noting a claim of negligence only requires a showing of "*any* departure," from the

10 standard of care, rather than the "*substantial* departure" required by *Youngberg*).[3] At best, the only

11 allegation pertaining to Defendant Dixon is that Plaintiff was never informed about his December

12 4, 2012 appointment due to a clerical error. Dkt. 6, ¶ 5.2. While this fact may constitute negligence

13 on the part of whoever committed the clerical error, mere negligence cannot serve as the basis for a

14 claim of deliberate indifference to a serious medical need, or as the basis for a claim Defendant

15 Dixon engaged in a "substantial departure" from acceptable professional judgment sufficient, to

16 satisfy the *Youngberg* professional judgment standard. *See Estelle*, 429 U.S. at 106; *Patten*, 274

17 F.3d at 842-43; *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) ("'[A]n *inadvertent*

18 failure to provide adequate medical care' does not, by itself, state a deliberate indifference claim

19 for § 1983 purposes.")(*quoting McGuckin,* 974 F.2d at 1060). *See also Farmer*, 511 U.S. at 837

20 (holding, for purposes of establishing deliberate indifference, a plaintiff must show an official

21 "*knows of* and disregards an excessive risk to inmate health or safety")(emphasis added).

22 _____

23     [3] In the same vein, Plaintiff's allegations pertaining to *res ipsa loqitur* fail to state a due process claim. *See Reber v. United States,* 951 F.2d 961, 964 (9th Cir. 1991). *Res ipsa loquitur*, if applicable, allows only for an inference of negligence, which cannot constitute a violation of the stricter standards of

24 deliberate indifference or *Youngberg*'s professional judgment standard. *Id.*; *Estelle*, 429 U.S. at 106.

1    Finally, in his response to Defendant Dixon's motion to dismiss, Plaintiff has made several

2    new allegations not contained in Plaintiff's complaint. *See* Dkt. 23, p. 4. Because these allegations

3    are not a part of Plaintiff's complaint, they are not relevant to resolving Defendant Dixon's motion

4    to dismiss. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) ("When reviewing a motion to

5    dismiss, we 'consider only allegations contained in the pleadings, exhibits attached to the

6    complaint, and matters properly subject to judicial notice.") (*quoting Swartz v. KPMG LLP*, 476

7    F.3d 756, 763 (9th Cir. 2007) (per curiam)).

8    As Plaintiff has failed to allege facts which would plausibly suggest: 1) Defendant Dixon

9    personally participated in a violation of Plaintiff's constitutional rights; 2) Defendant Dixon was

10   deliberately indifferent to Plaintiff's serious medical needs; or 3) Defendant Dixon's conduct was a

11   substantial departure from accepted professional judgment, practices, or standards, Plaintiff has

12   failed to state a claim under the Fourteenth Amendment Due Process clause under both the Eighth

13   Amendment deliberate indifference standard *and* the *Youngberg* professional judgment standard.

14      III.    **Fourteenth Amendment Equal Protection Claim**

15   The Fourteenth Amendment's Equal Protection Clause "is essentially a direction that all

16   persons similarly situated should be treated alike."  *City of Cleburne, Tex. v. Cleburne Living*

17   *Center*, 473 U.S. 432, 439 (1985).  To bring a successful equal protection claim, a plaintiff must

18   show differential treatment from a similarly situated class. *See Washington v. Davis*, 426 U.S. 229,

19   239 (1976).  For this differential treatment to give rise to a claim under 42 U.S.C. § 1983, "one

20   must show intentional or purposeful discrimination."  *Draper v. Rhay*, 315 F.2d 193, 198 (9th Cir.

21   1963) (inmate failed to show § 1983 violation in absence of "intentional or purposeful

22   discrimination."

23

24

Defendant Dixon has moved to dismiss all of Plaintiff's claims against her; however, Defendant Dixon has not argued how Plaintiff has failed to plead an equal protection claim under the Fourteenth Amendment. Nonetheless, for the same reason Plaintiff did not sufficiently plead a cause of action under the Fourteenth Amendment Due Process Clause as to Defendant Dixon, Plaintiff has failed to plead a cause of action under the Fourteenth Amendment Equal Protection Clause as to Defendant Dixon.

For Plaintiff to successfully plead a cause of action predicated on the equal protection clause of the Fourteenth Amendment, Plaintiff must allege, not only differential treatment, but "intentional or purposeful discrimination" on the part of the Defendant. As discussed in Section III, above, Plaintiff has failed to allege how Defendant Dixon personally participated in any violation of Plaintiff's constitutional rights. Indeed, Plaintiff has failed to allege how Defendant Dixon participated in, or was involved in any way, with Plaintiff's treatment whatsoever. Thus, Plaintiff has failed to allege with sufficient specificity how Defendant Dixon is involved in any alleged violation of Plaintiff's right to equal protection under the Fourteenth Amendment. *See Draper*, 315 F.2d at 198.

Plaintiff also alleges he was denied a grievance procedure which would allow him to address his concerns with SCC staff about the conditions of his confinement. Dkt. 6, ¶ 7.4. Plaintiff alleges he has a basic right to file a grievance, and his inability to file grievances amounts to unequal treatment between SCC residents and similarly situated prisoners or other committed persons. Dkt. 6, ¶¶ 7.4, 7.5. However, there is no constitutionally protected right to a specific grievance process. *See Ramirez v. Galaza,* 334 F.3d 850, 860 (9th Cir.2003) (citing *Mann v. Adams,* 855 F.2d 639, 640 (9th Cir.1988)). Further, even assuming Plaintiff has stated an equal protection claim premised on the lack of a grievance process, Plaintiff has not plead *Defendant*

1 | *Dixon* was in any way responsible, or even involved, in preventing Plaintiff from filing a

2 | grievance. *See* Dkt. 6, ¶¶ 5.9, 7.4.

3 |      Because Plaintiff has failed to allege facts which could plausibly establish Defendant Dixon

4 | engaged in intentional or purposeful discrimination, Plaintiff has failed to state a claim under the

5 | Fourteenth Amendment Equal Protection Clause.

6 | **CONCLUSION**

7 |      Based on the foregoing, the Court concludes Plaintiff has failed to state a claim on which

8 | relief can be granted. Accordingly, the Court recommends Defendant Dixon's Motion to Dismiss

9 | be granted. The Court further recommends Plaintiff be given leave to amend his complaint in order

10 | to state a claim against Defendant Dixon. *See Lucas v. Dep't of Corrections*, 66 F.3d 245, 248-49

11 | (9th Cir. 1995) ("unless it is absolutely clear that no amendment can cure the defect . . . a pro se

12 | litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to

13 | dismissal of the action.")

14 |      Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen

15 | (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure

16 | to file objections will result in a waiver of those objections for purposes of *de novo* review by the

17 | district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R.

18 | Civ. P. 72(b), the clerk is directed to set the matter for consideration on, May 13, 2016 as noted in

19 | the caption.

20 |      Dated this 19th day of April, 2016.

David W. Christel
United States Magistrate Judge

REPORT AND RECOMMENDATION ON
DEFENDANT DIXON'S MOTION TO DISMISS -
12